Thursday        16th         June, 2005.

Kent Jermaine Jackson, No. 318275,                     Petitioner,

 against      Record No. 042706

Warden of the Sussex I State Prison,                    Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed December 2, 2004, and the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Kent Jermaine Jackson was convicted in the Circuit Court of the City of Newport News of capital murder in the commission of a robbery or attempted robbery, robbery, felony stabbing, and statutory burglary.  The jury found the aggravating factor of vileness and fixed a sentence of death for the capital murder conviction and fixed sentences totaling life imprisonment plus 25 years and a $100,000 fine for the non-capital offenses.  The trial court imposed the sentences fixed by the jury.  This Court unanimously affirmed Jackson's convictions and upheld the sentence of death in Jackson v. Commonwealth, 266 Va. 423, 587 S.E.2d 532 (2003), cert. denied, ___ U.S. ___, 125 S. Ct. 281 (2004).

In claim (I)(A), petitioner alleges that Alfred Masters, one of his two appointed counsel, "deserted" him prior to trial. Petitioner alleges that he was left with only one counsel to perform all the work of his defense and that he was deprived of a second counsel's intellect and trial talents in prejudice to his right to the effective assistance of counsel.

The Court holds that claim (I)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test

enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the withdrawal hearing transcript, demonstrates that Masters filed a motion to withdraw on the basis of irreconcilable differences with petitioner and the trial court granted the unopposed motion. James Ellenson, petitioner's remaining counsel, represented to the court that Masters had done an extensive amount of preparation on the technical aspects of the case and was providing all of that information to Ellenson. Petitioner was present at the hearing and agreed with Ellenson's assessment that a second trial counsel was not required. Petitioner has alleged no specific error caused by Master's withdrawal and has not articulated how Master's presence would have affected the proceedings against him. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (I)(B), petitioner alleges that trial counsel's failure to object to the trial court's approval of Master's motion to withdraw and to move for the appointment of a second counsel constituted a failure of representation. The Court holds that claim (I)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. At the time of petitioner's trial, Va. Code § 19.2-163.7 provided, in pertinent part, that a trial court appoint "one or more" attorneys. As stated above, counsel had received ample assistance from Masters who shared his work-product with trial counsel when he withdrew. Petitioner agreed that it was not necessary to appoint a second counsel. Further, the record demonstrates that the trial court was prepared to appoint co-counsel if trial counsel felt that to be necessary.

2

Thus, petitioner has failed to demonstrate that counsel's performance was deficient. Further, petitioner has failed to articulate how any alleged error of counsel was caused by the lack of co-counsel at trial or how the presence of co-counsel would have affected the proceedings. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (I)(C), petitioner alleges that the trial court's granting of co-counsel's motion to withdraw was a denial of the right to adequate counsel. The Court holds that claim (I)(C) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

In a portion of claim (II), petitioner alleges that the indictment failed to state a death-eligible capital offense by not including the specific aggravating factors listed in Code § 19.2-264.2. Petitioner argues that there are two separate capital offenses in Virginia: death-eligible capital murder under Code § 18.2-31 and a finding of future dangerousness or vileness, or both; and the lesser-included offense of capital murder under § 18.2-31 with no finding of either aggravating factor. Petitioner argues that death is only an option in the former case, and because proof of the aggravating factors increases the applicable punishment, it is an element of the offense and must be set forth in the indictment.

The failure to include aggravating factors in an indictment is not a jurisdictional defect and is waived by the failure to object to the indictment before trial. Wolfe v. Commonwealth, 265 Va. 193, 223-24, 576 S.E.2d 471, 488-89 (2003); Rule 3A:9(b),(c). The Court

holds that this portion of claim (II) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Parrigan, 215 Va. at 29, 205 S.E.2d at 682.

In another portion of claim (II), petitioner alleges that trial counsel was ineffective for not challenging the capital murder indictment on the grounds that it failed to identify the aggravating factors. The Court holds that this portion of claim (II) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. There is no constitutional requirement that a capital murder indictment include allegations concerning aggravating factors. Ring v. Arizona, 536 U.S. 584, 597 n. 4 (2002) (noting that the Fourteenth Amendment has not been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury"); Apprendi v. New Jersey, 530 U.S. 466, 477 n. 3 (2000). Furthermore, this Court has held that a defendant charged with capital murder is not entitled to a bill of particulars delineating the Commonwealth's intended aggravating factors when the indictment specifying the crime gives the defendant notice of the nature and character of the offense charged. Roach v. Commonwealth, 251 Va. 324, 340, 468 S.E.2d 98, 107 (1996). The indictment in this case gave petitioner notice of the nature and character of the offense. Thus, counsel cannot be held ineffective for failing to make a frivolous argument. Furthermore, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (III)(A), petitioner alleges that trial counsel was ineffective for failing to interview or call Jacqueline Cruz as an alibi witness. Petitioner alleges that Cruz, petitioner's girlfriend, would have testified that petitioner was with her in

4

King George, Virginia from April 14, 2000 until 5:00 p.m. on April 16, 2000.  The Court holds that claim (III)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including petitioner's statements to the police and the affidavit of trial counsel, demonstrates that the indictment charged the murder occurred between April 16 and 18, 2000; that petitioner admitted to the police and to his counsel that he was present when the murder took place; and that petitioner never provided any alibi information to counsel.  Counsel's representation does not fall "below an objective standard of reasonableness" when counsel relies upon information supplied by his client and "[does] not also investigate alternative defenses." Curo v. Becker, 254 Va. 486, 493, 493 S.E.2d 368, 371 (1997)(citing Strickland, 466 U.S. at 688, 691).  Furthermore, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (III)(B), petitioner alleges that trial counsel was ineffective for failing to interview Jacqueline Cruz and to have her testify as to petitioner's character and demeanor "in the weeks and months after the murder."  Cruz allegedly would have testified that petitioner "did not appear worried or haunted by anything" while he lived with her after April 2000.  The Court holds that claim (III)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Self-serving evidence of petitioner's character and demeanor after April 2000 is irrelevant because he admitted to the police and to his counsel that he was present at the murder.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's

5

alleged errors, the result of the proceeding would have been different.

In claim (III)(C), petitioner alleges that trial counsel was ineffective for failing to have Jacqueline Cruz sequestered at trial, thus forfeiting the opportunity to use her as a witness. The Court holds that claim (III)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of trial counsel, demonstrates that petitioner's investigator interviewed Cruz, that she never suggested that petitioner had been with her at the time of the murder, and that counsel thus never contemplated calling her as a witness. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV), petitioner alleges that trial counsel was ineffective for failing to establish, through the medical examiner, the date and time of the victim's death, which was "crucial information" given Jacqueline Cruz's ability to provide an alibi for Sunday. The Court holds that claim (IV) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. As discussed above, the record demonstrates that petitioner admitted that he was present at the murder and never provided alibi information. The indictment specified that the crime occurred between April 16 and 18, 2000. Counsel had no independent reason for establishing April 16 as the time of death. Furthermore, petitioner does not allege that the medical examiner would have been able to more precisely narrow the

6

time of death from the period specified in the indictment. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim (V)(A), petitioner alleges that he was denied the effective assistance of counsel during jury selection because counsel failed to make proper challenges to juror Brooke Wright who allegedly favored the Commonwealth. Petitioner argues that Wright should have been challenged for cause because she indicated during voir dire that she felt petitioner should testify, stated she would believe a law-enforcement officer over other witnesses, and said she believed "essentially" in "an eye for an eye." While Wright was later rehabilitated by the Commonwealth, petitioner contends "she was never asked to back down from her prejudicial statement that she would give preference to" an officer's testimony.

The Court holds that this portion of claim (V)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of *voir dire*, demonstrates that Wright, upon further questioning, would be fair and impartial, and would follow the trial court's instructions. Wright stated that she understood a defendant had a right not to testify and she would follow the court's instructions not to draw unfavorable inferences if that right were exercised. Wright also confirmed that if she was instructed that the testimony of all witnesses, whether or not law-enforcement, had to be taken equally she could set aside her individual belief as to law-enforcement officers and would follow the instruction. Finally, Wright indicated that she would follow the law and could sentence petitioner to life. The *voir dire*, taken as a whole, demonstrates

7

that there was no valid basis for moving to strike Wright.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (V)(A), petitioner alleges that he was denied the effective assistance of counsel during jury selection because counsel failed to make proper challenges to juror Shera Price, who allegedly favored the Commonwealth.  Petitioner argues Price should have been challenged for cause because she indicated during *voir dire* that she believed a defendant should prove that he did not deserve the death penalty.

The Court holds that this portion of claim (V)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the transcript of *voir dire*, demonstrates that Price, upon further questioning, would be fair and impartial, and would follow the trial court's instructions.  Price stated that she could follow the trial court's instructions that the Commonwealth must prove certain factors beyond a reasonable doubt before the jury can give the death penalty and that she would be able to follow the law.  The *voir dire*, taken as a whole, demonstrates that there was no valid basis for moving to strike Price.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(B), petitioner alleges that trial counsel was ineffective for failing to rehabilitate prospective juror Danis Lensch who the court *sua sponte* struck for cause.  Lensch stated she would hold the court and the prosecution to a higher standard and

8

would expect proof higher than "beyond a reasonable doubt" before agreeing to sentence someone to death. Petitioner concedes that Lensch's views were troublesome, but argues that counsel could have rehabilitated Lensch by making it clear that "reasonable doubt" was in fact a high standard of proof.

The Court holds that claim (V)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of *voir dire*, demonstrates that Lensch indicated several times that she would hold the Commonwealth and the trial judge to a higher standard than "beyond a reasonable doubt" and that she did not know whether she could follow the court's instructions on the "reasonable doubt" standard. Counsel's representation does not fall "below an objective standard of reasonableness" for declining to attempt to rehabilitate a witness who has unequivocally expressed doubts as to her ability to follow the trial court's instructions. Further, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (V)(C), petitioner alleges that he was denied the effective assistance of counsel during jury selection because counsel failed to rehabilitate five prospective jurors who stated their opposition to the death penalty and counsel failed to object to their dismissal on the grounds that petitioner was entitled to a jury of his peers and that dismissing persons who disagree with the death penalty would deprive petitioner of that right. Petitioner concedes that it is proper to dismiss for cause prospective jurors who oppose the death penalty. Petitioner, however, argues that this is an issue that should be "asserted again and again" and, thus, claims counsel should have objected to the dismissal of the five jurors in order to preserve the issue for appeal.

9

The Court holds that claim (V)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of *voir dire*, demonstrates that the five prospective jurors were unequivocally opposed to the death penalty. Therefore, there was no valid basis for counsel to object when the trial court struck the five prospective jurors. Further, petitioner cites no authority which supports his position that striking jurors who oppose the death penalty deprives a defendant of a jury of his peers and, thus, cannot demonstrate any likelihood that an appeal as to this issue would have been successful. Petitioner has not articulated any basis for his speculation that any of the jurors could have been rehabilitated. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI), petitioner alleges that trial counsel, "apparently intimidated by the Trial Court," was ineffective for deciding not to call Dr. Steven Ganderson as a trial witness. The trial court held that Dr. Ganderson would not be allowed to testify as to petitioner's veracity or the reliability of his confession. Petitioner asserts that Dr. Ganderson, however, would have been allowed to testify about antecedents concerning isolation, police pressure, distress, and cognitive and situational factors that could affect the reliability of a defendant's statements.

The Court holds that claim (VI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial

transcript and the affidavit of trial counsel, demonstrates that the Commonwealth was prepared to rebut Dr. Ganderson's testimony by presenting the testimony of Dr. Don Killian who had examined the petitioner.  Trial counsel's decision was not based on intimidation by the trial court, but on a tactical decision that not calling Dr. Ganderson would bar Dr. Killian's "contrary testimony."   A tactical decision on the use of a witness is an area of trial strategy left to the discretion of counsel.  See Strickland, 466 U.S. at 689-90.  Further, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VII), petitioner alleges that trial counsel was ineffective for failing to object when the trial court further defined for the jury the definition of "willful and deliberate." The record demonstrates that the jury had received an instruction defining "willful, deliberate, and premeditated."  During deliberations, the jury asked for a dictionary in order to obtain the definition for "willful and deliberate."  The trial court prepared an additional instruction amplifying the terms and trial counsel requested the court to give the new instruction.  Petitioner now argues that the jury "almost certainly" had resolved the issue of premeditation in favor of the Commonwealth.  The petitioner claims that the jury's question with "'willful and deliberate' was almost certainly a question in favor of the defense" and that the additional instruction encouraged the jury to consider "willful and deliberate" as being the same as "premeditated."

The Court holds that claim (VII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Petitioner proffers no basis for his speculation that prior to being given the new instruction the jury was predisposed to find in favor of the petitioner concerning the terms "willful and deliberate."  Petitioner does not challenge the

11

additional instruction as being an inaccurate statement of the law. Counsel's representation does not fall "below an objective standard of reasonableness" when he requests an instruction that properly states the law. Further, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VIII), petitioner alleges that trial counsel was ineffective for failing to object to the trial court's issuance of a revised finding instruction on "stabbing in the commission of a felony." Petitioner asserts counsel improperly agreed to a change that made it easier for the jury to resolve its questions and expanded the range of behavior that justified a finding. The record reflects that petitioner was indicted on a charge of unlawfully stabbing, cutting or wounding the victim in the commission of a felony. The initial finding instruction referenced "using a knife in the commission of a felony." During deliberations, the jury asked the court whether the offense required a knife only. Trial counsel then agreed with a substitute finding instruction that described the offense as "guilty of stabbing, cutting or wounding in the commission of a felony, as charged in the indictment."

The Court holds that claim (VIII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The Court finds that the substitute finding instruction accurately described the offense charged in the indictment, and counsel's representation did not fall "below an objective standard of reasonableness" for agreeing to a proper instruction. Further, petitioner has failed to demonstrate that

there is a reasonable probability that, but for counsel's alleged

12

error, the result of the proceeding would have been different.

In claim (IX), petitioner alleges that trial counsel was ineffective for failing to preserve for direct appeal the pre-trial motion for a change of venue based on extensive publicity about the murder. On direct appeal, the Court held that counsel's failure to preserve the continuing motion before the jury was impaneled constituted a waiver pursuant to Rule 5:25. Jackson, 266 Va. at 430-31, 587 S.E.2d at 539.

The Court holds that claim (IX) fails to satisfy the "prejudice" prong of Strickland. The trial court struck all the members of the venire who were aware of the murder based on media accounts or personal knowledge, except for Sandra Peiffer whose participation as a juror was upheld on direct appeal. Jackson, 266 Va. at 435, 587 S.E.2d at 541-42. Furthermore, a panel of 24 jurors was selected after voir dire of only 42 prospective jurors. Thus, jury selection in this case was accomplished with relative ease. See Kasi v. Commonwealth, 256 Va. 407, 420, 508 S.E.2d 57, 64 (1998), cert. denied, 527 U.S. 1038 (1999) (holding that jury selection was accomplished with relative ease when a panel of 24 jurors was selected after voir dire of only 58 prospective jurors). The ease of seating a jury is a relevant factor in determining whether a motion for a change of venue should be granted. Thomas v. Commonwealth, 263 Va. 216, 232, 559 S.E.2d 652, 661 (2002). On this record, the attorney's performance was not deficient because the motion, even if made, would not have been successful. Furthermore, petitioner has failed to prove that, but for counsel's alleged error, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 687.

In claim (X), petitioner alleges that trial counsel was ineffective for failing to preserve for direct appeal the pre-trial motion to limit the Commonwealth's presentation of crime scene and

13

autopsy photographs of the victim.  The trial court held that the motion was premature because the Commonwealth had not identified which of the photographs it intended to use.  On direct appeal, the Court held that counsel's failure to object at trial to the admission of the fourteen photographs constituted a waiver pursuant to Rule 5:25.  Jackson, 266 Va. at 431, 587 S.E.2d at 539.

The Court holds that claim (X) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the pre-trial motion to limit the photographs and the transcripts, demonstrates that counsel moved to exclude photographs which were either cumulative or of the autopsy.  The motion was dismissed as premature.  At the time of trial, however, the Commonwealth had selected fourteen photographs and trial counsel had no objections.  Counsel then used several of the photographs during jury selection as a tactical decision to identify jurors who could be adversely affected by the photographs and other evidence.  Such tactical decisions are an area of trial strategy left to the discretion of counsel.  See Strickland, 466 U.S. at 689-90.  Petitioner has not identified any photographs that were cumulative or unduly prejudicial.  On direct appeal, the Court held in its proportionality review that the pictures "accurately depicted the condition of the victim...." and noted "the jury was entitled to use the photographs to make an informed decision on the [petitioner's] guilt."  Jackson, 266 Va. at 441, 587 S.E.2d at 545.  Thus, petitioner has failed to demonstrate how counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (XI), petitioner alleges that trial counsel was ineffective for failing to request the trial court to conduct a proportionality review of the jury's imposition of the death penalty

14

to determine whether it was based upon passion and prejudice. The Court holds that claim (XI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Proportionality review is entirely a creature of statute and is not required by either the federal or Virginia constitutions. Winston v. Commonwealth, 268 Va. 564, 620, 604 S.E.2d 21, 53 (2004). Code § 17.1-313 imposes the requirement to conduct such a review upon this Court, not upon the trial court. Id.; Jackson, 266 Va. at 431-32, 587 S.E.2d at 540. Counsel is not deficient for failing to assert a claim that has no merit. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Further, having conducted the statutorily required proportionality review, this Court concluded that the sentence was not the result of passion or prejudice and was not disproportionate. Jackson, 266 Va. at 441-42, 587 S.E.2d at 545-46. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (XII), petitioner alleges that trial counsel was ineffective for failing to object to the Commonwealth Attorney's penalty phase argument to the jury comparing the worth of the petitioner and the victim. The record reflects that the Commonwealth referred to the victim as "a gift to the community" and to petitioner as someone "who was given everything and only sought to take more." The Commonwealth then argued that the jury should, "[w]eigh the life he had against what he has taken, and when you do you will know that the appropriate punishment for capital murder is death." Petitioner alleges counsel "should have protected [p]etitioner from these comparisons" by objecting to this argument.
The Court holds that claim (XII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court has previously held that

15

"victim impact testimony is relevant to punishment in a capital murder prosecution in Virginia." Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389-90 (1994). The record, including the trial transcript, demonstrates that the Commonwealth's comments about the victim and petitioner were based on evidence already in the record. Petitioner does not argue that the comments, standing alone, were factually inaccurate or unsupported by the record. Petitioner concedes that the United States Supreme Court approved the use of victim impact evidence in Payne v. Tennessee, 501 U.S. 808 (1991), but argues there is a judicial movement towards recognizing that victim impact statements and argument could be "so unduly prejudicial that it renders the trial fundamentally unfair." Id. at 825. In support of this argument, petitioner asks this Court to consider Humphries v. Ozmint, 366 F.3d 266 (4th Cir. 2004). The United States Court of Appeals, however, has since vacated that panel opinion and affirmed the judgment of the district court, holding that the South Carolina Supreme Court did not err when it held that the solicitor's comparison of the defendant's life to that of the victim in closing argument during the sentencing phase did not render the trial fundamentally unfair. Humphries v. Ozmint, 397 F.3d 206, 226 (4th Cir. 2005) (*en banc*). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (XIII), petitioner alleges that trial counsel was ineffective for failing to adequately challenge the unconstitutional character of the death penalty in Virginia. Petitioner presents an argument relying upon various reports including a 2000 report of the American Civil Liberties Union on the death penalty in Virginia and a 2001 study of Virginia's system of capital punishment by the Commonwealth's Joint Legislative Audit and Review Commission, which

16

he contends counsel should have raised "to the extent that the factual basis...existed at the time of petitioner's trial and direct appeal proceedings."  This new argument cites four factors that have purportedly rendered the imposition of the death penalty in Virginia "unconstitutionally random and arbitrary:" the locus of the crime; the disproportionate application for female victims and where the races of the victim and defendant differ; the disproportionate impact on indigent defendants represented by appointed counsel; and the ineffectiveness of Virginia's direct and collateral review processes in detecting trial errors.

The Court holds that claim (XIII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record demonstrates that counsel filed a pre-trial motion challenging the constitutionality of the death penalty on various grounds including due process, equal protection, and cruel and unusual punishment.  Counsel's supporting memorandum contained arguments that the death penalty is discriminatorily imposed; that the statutes deny defendants meaningful review on direct appeal; and that the statutes deny the effective assistance of counsel because of the manner in which Virginia appoints counsel for the indigent and because the collateral review of ineffective assistance of counsel claims is not meaningful.  This Court rejected petitioner's constitutional challenges on direct appeal.  Jackson, 266 Va. at 429-30, 587 S.E. 2d at 538-39.  Counsel is not ineffective for making strategic decisions on the selection of arguments that advance a meaningful constitutional attack on a statute.  See Strickland, 466 U.S. at 689-90.  Further, the constitutionality of the death penalty has been upheld repeatedly by this Court.  Lovitt v. Commonwealth, 260 Va. 497, 508, 537 S.E.2d 866, 873-74 (2000), cert. denied, 534 U.S. 815 (2001).  Thus, petitioner has failed to demonstrate that counsel's performance was deficient, or that there is a reasonable

probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In an unenumerated claim, petitioner alleges that all of the "foregoing claims" of ineffective assistance of counsel constitute separate claims for relief "based on the direct violations of his said constitutionally protected rights."  The Court holds that this claim is procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Parrigan, 215 Va. at 29, 205 S.E.2d at 682.

Finally, petitioner recites, "The Newport News Circuit Court interfered with petitioner's investigation of possible juror improprieties."  Petitioner further states that he filed with this Court an appeal of the circuit court's order denying him a copy of the "jury list" containing the addresses and telephone numbers of the jury panel and "for the purposes of this petition, Petitioner prays this Court to preserve the issue of juror misconduct until Petitioner's counsel may have access to the information allowing them to locate and question the jurors."  The Court declines "to preserve the issue of juror misconduct."  Despite habeas counsel's representation of having spoken with three jurors (one of whom refused to speak) and one alternate juror, the petition contains no factual allegations regarding, or even indicating, any type of juror misconduct.

Petitioner's requests for a plenary hearing, for leave to conduct discovery, for reasonable litigation expenses, and for leave to amend the petition are denied.

Accordingly, the petition is dismissed.

A Copy,

Teste:

Clerk

18